United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

WILLIAM E. FLEMING,

Plaintiff(s),

v.

AC SQUARE, INC.,

Defendant(s).

_____________________________________/

CASE NO. 5:11-cv-01830 EJD

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING AS MOOT DEFENDANT'S MOTION TO STRIKE**

[Docket Item Nos. 43, 64]

In this employment discrimination action, presently before the court is Defendant AC Square, Inc.'s ("Defendant") Motion for Summary Judgment. See Docket Item No. 43. Also before the court is Defendant's Motion to Strike the Second Amended Complaint ("SAC") filed by Plaintiff William E. Fleming ("Plaintiff"). See Docket Item No. 64. The court found these matters appropriate for decision without oral argument pursuant to Local Civil Rule 7-1(b), and previously vacated the corresponding hearing date.

Federal jurisdiction arises pursuant to 28 U.S.C. § 1331. The court has carefully considered the moving, opposing and reply papers.[1] For the reasons stated below, Defendant's Motion for

[1] Plaintiff points out that he is not represented by an attorney and requests that his pleadings be given the deference allotted to those individuals proceeding in pro se. As it must, the court has liberally construed Plaintiff's written submissions. See Abassi v. Immigration & Naturalization Serv., 305 F.3d 1028, 1032 (9th Cir. 2002). However, liberal construction is not a substitute for Plaintiff's burden of production in response to a motion for summary judgment. See Bias v. Moynihan, 508 F.3d 1212, 1218-19 (9th Cir. 2007) ("A district court does not have a duty to search for evidence that would create a factual dispute . . . . A district court lacks the power to act as a

United States District Court
For the Northern District of California

Summary Judgment will be granted, and the Motion to Strike will be denied as moot.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Defendant's Contract with Comcast

Defendant is a cable installation contractor that primarily services cable television and internet providers such as Comcast Cable Communications Management, LLC ("Comcast"). See Decl. of Andrew Bahmanyar ("Bahmanyar Decl."), Docket Item No. 43-1, at ¶ 2. Comcast contracted with Defendant to provide cable installation services in five of the geographic regions designated by Comcast for the San Francisco Bay Area. See id., at ¶ 3. Known as "systems," Defendant's contract with Comcast included the South Bay System, which covers the area from Mountain View/Los Gatos to Gilroy, and the West Bay System, covering San Francisco to Palo Alto. See id.

Defendant maintained separate offices to cover the Comcast systems and staffed each location with a sufficient number of Cable Installation Technicians, one Lead Cable Technician, and one Cable Installation Supervisor. See id., at ¶ 4. In addition, each of Defendant's offices had a separate System Manager with ultimate responsibility for the entire system. See id. Manny Rubulacalva ("Rubulacalva") was the System Manager for the South Bay System at the times relevant to this action. See id. Max Alvarado ("Alvarado") was the System Manager for the West Bay System. See id.

In an effort to expand its service to Comcast, Defendant created new departments in the South Bay and West Bay Systems to provide collection services on delinquent accounts, known as Non-Pay Collection Departments. See id., at ¶ 5. Although these new departments shared a physical location with the Cable Installation Departments, each Non-Pay Collection Department maintained its own Non-Pay Technicians, Lead Non-Pay Technicians, and its own Non-Pay Supervisors. See id. The only overlap between the Cable Installation and the Non-Pay Departments was a shared System Manager. See id.

Defendant obtained a contract from Comcast in June, 2007, to perform non-pay work in the

---

party's lawyer, even for pro se litigants.").

South Bay System. See id., at ¶ 6. Defendant also obtained a 30-day "proving contract" for non-pay work in the West Bay System in August, 2007. See id. Defendant hired Luigi Robles ("Robles") as the Non-Pay Supervisor in the South Bay System. See id. Alvarado hired Plaintiff as the Non-Pay Supervisor for the West Bay System. See id. Plaintiff had previously worked for Vitel, the company which preceded Defendant's acquisition of the Comcast collections contract for the West Bay System. See id., at ¶ 7.

**B. Defendant Transfers Plaintiff to the South Bay System**

The Comcast "proving contract" for the West Bay System expired in September, 2007, and Comcast thereafter stopped sending Defendant collection work for that system. See id., at ¶ 8. As a result, Defendant was forced to close the Non-Pay Collection Department for the West Bay System. See id. However, hopeful that it may again obtain the West Bay Comcast contract in the near future, Defendant transferred Plaintiff to the South Bay System with the intention to transfer Plaintiff back to the West Bay System if the contract was obtained. See id., at ¶ 9. Upon the transfer, Plaintiff was assigned as a second Non-Pay Supervisor in the South Bay System along with Robles, who was already assigned as the original South Bay Supervisor at the time. See id. This arrangement was temporary. See id.

By November, 2007, Comcast had still not awarded Defendant a contract for non-pay collection work in the West Bay System and it appeared to Defendant that no such contract would be awarded in the future. See id., at ¶ 10. In light of that development, Defendant decided that two Non-Pay Supervisors were unnecessary in the South Bay System. See id., at ¶ 11. Thus, Defendant decided to offer to Plaintiff the opportunity to work as a Non-Pay Technician rather than terminate his employment altogether. See id. Plaintiff accepted this offer and began working in the new position on or about November 3, 2007. See id. Another employee was not hired or promoted to fill Plaintiff's prior supervisory position. See id.

Jose Garcia ("Garcia") was also hired by Defendant from Vitel as a Non-Pay Technician for the South Bay System. See id., at ¶ 12. Soon after he started working for Defendant, he began to perform job duties associated with a lead position. See id. Accordingly, Defendant decided to

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

formally change Garcia's job title to that of Lead Non-Pay Technician in or about September, 2007. See id. Garcia was never promoted to supervisor. See id.

Defendant, who is African-American, claims that he observed certain employees make racial remarks while working at the South Bay System offices. See Dep. of Plaintiff William Fleming ("Pl.'s Dep."), at pp. 230:23-233:24. The first incident occurred when a co-worker used the racial remark when greeting Plaintiff. See id., at pp. 155:17-157:10; 230:23-233:24. Plaintiff did not report this incident but instead "let it pass." See id., at pp. 157:25-158:6; 177:24-175:1; 182:15-22; 230:23-232:8. The second incident occurred outside the South Bay System Offices while Plaintiff was walking to his car. See id., at pp. 158:7-163:3; 176:14-177:23. On that occasion, Plaintiff overheard two to three employees using the same racial remark. See id. Plaintiff was unsure whether the term was directed at him and did not report the incident. See id., at pp. 161:24-163:3; 177:24-175:1: 182:15-22.

The third incident occurred in the break room at the South Bay System offices, when Plaintiff again overheard other employees using the racial remark in conversation. See id., at pp. 169:17-171:4. This time, Plaintiff immediately reported the incident to Rubulacalva and Robles. See id., at pp. 172:4-8, 12-14. Robles addressed the incident by telling the employees in the break room that such language was inappropriate and would not be tolerated. See id., at pp. 172:15-174:17. Robles told Plaintiff that it would not happen again. See id., at pp. 174:15-17.

**C. Plaintiff files discrimination charge with the Equal Employment Opportunity Commission ("EEOC")**

Plaintiff filed a charge of discrimination with the EEOC on or about December 31, 2007, while still employed with Defendant. See Bahmanyar Decl., at ¶ 13, Ex. B.; see also Decl. of Benjamin A. Emmert ("Emmert Decl."), at ¶ 6, Ex. E; see also Pl.'s Dep., at pp. 250:9-252:21, 262:10-21. In the charge, Plaintiff alleged that, due to his race, Defendant changed his job duties and job title from Non-Pay Supervisor to Non-Pay Technician and promoted Garcia to his former supervisory position. See Bahmanyar Decl., at ¶ 13, Ex. B.; see also Emmert Decl., at ¶ 6, Ex. E; see also Pl.'s Dep., at pp. 262:10-17. The EEOC investigated Plaintiff's charge but was eventually

United States District Court
For the Northern District of California

unable to conclude that Defendant had violated the relevant employment statutes. See Bahmanyar Decl., at ¶ 13, Exs. C, D; see also Emmert Decl., at ¶ 7, Exs. E, F.

**D. Plaintiff is laid-off and commences this case**

Plaintiff was laid-off on or about August 13, 2008. See Bahmanyar Decl., at ¶ 13. Defendant contends the lay-off was due to an overall cost-cutting reduction in workforce. See id. Another employee was laid-off at the same time as Plaintiff. See id.

Plaintiff thereafter filed a Complaint for violations the California Fair Employment and Housing Act ("FEHA") on October 31, 2008, in Santa Clara County Superior Court. See Not. of Removal, Docket Item No. 1, at Ex. 1. Defendant removed the case to this court on April 14, 2011, after Plaintiff filed a First Amended Complaint alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII'). See id., at Ex. 9. The court denied Plaintiff's subsequent motion to remand the action back to superior court. See Docket Item No. 31. Plaintiff thereafter submitted a proposed SAC after Defendant filed the current Motion for Summary Judgment. See Docket Item No. 59.

## II. THE MOTION TO STRIKE

The court first addresses Defendant's Motion to Strike the proposed SAC. Since the SAC has not been actually filed but only designated as received, the court construes the submission as Plaintiff's request for leave to amend his pleading pursuant to Federal Rule of Civil Procedure 15(a)(2).[2]

Ordinarily, leave to amend is granted with liberality. Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990). But leave need not be granted where the amendment would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay. See Janicki Logging Co. v. Mateer, 42 F.3d 561, 566 (9th Cir. 1994); see also Roberts v. Ariz. Bd. of Regents, 661 F.2d 796, 798 (9th Cir. 1981).

---

[2] The court understands that requests for leave to amend arising at this point in a case are normally examined under the more stringent "good cause" standard contained in Federal Rule of Civil Procedure 16(b)(4). See, e.g., Johnson v. Mammoth Recreations, Inc., 975 F.2d 604 (9th Cir. 1992). The court has not applied that standard here, however, because the scheduling order did not provide a strict deadline for the amendment of pleadings.

United States District Court
For the Northern District of California

Here, Plaintiff's indicates he seeks to comply with the "well pleaded complaint" rule through the SAC. See Docket Item No. 65. The "well-pleaded complaint" rule, however, has minimal importance at this stage in the litigation since the currently pending dispositive motion is one for summary judgment rather than one for dismissal. Indeed, the "well-pleaded" standard applies to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) since such motion tests the adequacy of the complaint's allegations. Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009). In contrast, a motion for summary judgment under Rule 56 tests the adequacy of the evidence. See Whitlock v. Pepsi Americas, 681 F. Supp. 2d 1116, 1123 (N.D. Cal. 2010) ("[P]laintiffs' request to amend the complaint wholly misunderstands the thrust of defendants' motion for summary judgment, which does not challenge the adequacy of the *allegations* in the complaint, but challenges the sufficiency of plaintiffs' *evidence* . . . ." (emphasis in original)). Amendment to comply with the "well pleaded complaint" rule is unnecessary at this point. For this reason, the court finds Plaintiff's proposed amendment futile.

The timing of the proposed amendment must also be noted. The SAC now appears after the close of discovery, subsequent to the filing of a motion for summary judgment, and only four months before the commencement of the trial. See Docket Item Nos. 32, 41. While the court is cognizant of Plaintiff's pro se status as well the policy favoring amendments, allowing leave to amend at this time will cause undue delay as well as undue prejudice to Defendant, who has already completed discovery and moved for summary judgment on that basis.

Accordingly, leave to amend will be denied and the SAC ordered stricken. Defendant's Motion to Strike will be denied as moot.

## III. THE MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard

A motion for summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the

United States District Court
For the Northern District of California

pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets this initial burden, the burden then shifts to the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324. The court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324. However, the mere suggestion that facts are in controversy, as well as conclusory or speculative testimony in affidavits and moving papers, is not sufficient to defeat summary judgment. See Thornhill Publ'g Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979). Instead, the non-moving party must come forward with admissible evidence to satisfy the burden. Fed. R. Civ. P. 56(c); see also Hal Roach Studios, Inc. v. Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990).

A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Barlow v. Ground, 943 F.2d 1132, 1134-36 (9th Cir. 1991). Conversely, summary judgment must be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

**B. Change in Job Title**

Plaintiff first claims that Defendant violated Title VII and FEHA when it discriminated against him because of his race by changing his job title and duties from that of Non-Pay Supervisor to Non-Pay Technician. In other words, Plaintiff alleges that Defendant treated him differently than other similarly situated employees - a claim of disparate treatment.

Title VII makes it unlawful for an employer to refuse to hire a person because of his or her race. 42 U.S.C. § 2000e-2(a)(1). "In responding to a summary judgment motion in a Title VII disparate treatment case, a plaintiff may produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the defendant's decision, or alternatively

United States District Court
For the Northern District of California

may establish a prima facie case under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." Dominguez-Curry v. Nev. Transp. Dep't, 424 F.3d 1027, 1037 (9th Cir. 2005).

In order to establish a prima facie case of disparate treatment, a plaintiff must show that: (1) he belongs to a protected class; (2) he performed his job satisfactorily; (3) he was subject to an adverse employment action; and (4) similarly-situated individuals outside his protected class were treated more favorably. See id.

At summary judgment, the degree of proof necessary to establish a prima facie case is "minimal and does not even need to rise to the level of a preponderance of the evidence." Id. But failure to establish any essential element of the case is grounds for summary judgment. Celotex, 477 U.S. at 322. Since it is plaintiff's burden to demonstrate a prima facie case, defendant need only show that there is "an absence of evidence to support [plaintiff's] case." Id. at 323.

If plaintiff satisfactorily demonstrates a prima facie case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for its conduct. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981). If defendant states a reason, the burden then shifts back to plaintiff to show that the reason is a pretext for discrimination. Id.

FEHA, like Title VII, makes it unlawful for an employer to refuse to hire a person because of his race. Cal. Gov't Code § 12940(a). A plaintiff may make out a prima facie case of discrimination under FEHA based on the same four elements applicable to Title VII. See Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317, 355 (2000).

### 1. Prima-Facie Case

Presuming, as Defendant does, that Plaintiff can satisfy the first, second and third elements of a prima facie case, it is nonetheless clear from the record that Plaintiff cannot establish the fourth element.

When, as here, a change in job title is the result of an alleged reduction in workforce, Plaintiff is not required to show that he was replaced. See Coleman v. The Quaker Oats Co., 232 F.3d 1271, 1281 (9th Cir. 2000). Instead, Plaintiff must demonstrate "'through circumstantial,

United States District Court
For the Northern District of California

statistical, or direct evidence that the discharge occurred under circumstances giving rise to an inference of [race] discrimination.'" Id. (quoting Rose v. Wells Fargo & Co., 902 F.2d 1417, 1421 (9th Cir. 1990)). The inference can be established by showing (1) that Defendant had a continuing need for his skills and services such that his job duties were still being performed or (2) that others outside of his protected class were treated more favorably. Id.

Looking at the evidence, it is undisputed that Defendant's standard policy was to have one Non-Pay Supervisor in each system, and that the South Bay System was already being supervised by Robles at the time Plaintiff was transferred. See Pl.'s Dep., at pp. 82:19-83:3, 94:3-6, 148:12-149:6; see also Bahmanyar Decl., at ¶¶ 9-11. It is also undisputed that Defendant no longer did non-pay collection work in the West Bay System after Plaintiff was transferred. See Pl.'s Dep., at pp. 56:2-11, 254:24-255:5; see also Bahmanyar Decl., at ¶¶ 7-10. Based on these circumstances, Defendant contends that Plaintiff's continuation as a temporary second supervisor in the South Bay System was unwarranted. See Bahmanyar Decl., at ¶ 11. Since Plaintiff has not come forward with admissible evidence demonstrating otherwise, he has not shown there was a continuing need for his supervisory position after he was transferred from the West Bay System to the South Bay System.

Similarly, Plaintiff has not shown that the alleged promotion of Garcia demonstrates disparate treatment. The evidence establishes that Garcia was already working at the South Bay System when Plaintiff was transferred and was designated as a Lead Technician and not a supervisor. See id., at ¶ 12. In addition, Garcia's job duties remained unchanged after he was designated a lead. See id. Thus, Garcia was not similarly-situated to Plaintiff because he was not transferred to the South Bay System from a closed system, and was not treated more favorably than Plaintiff because he was not promoted to a supervisory position. His job title was changed to match his actual duties.

There court is therefore left only with Plaintiff's unsupported claim that the demotion he experienced was due to some unstated policy of "keep[ing] all management in the Hispanic race." That is not enough to establish the fourth element of a prima facie case. See Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005) (holding "conclusory statements of bias do not carry

the nonmoving party's burden in opposition to a motion for summary judgment"); see also Lucas v. Chi. Transit Auth., 367 F.3d 714, 726 (7th Cir. 2004) ("[C]onclusory statements, not grounded in specific facts, are not sufficient to avoid summary judgment."); Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993) ("When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact."); Forsberg v. Pac. Nw. Bell Tel. Co., 840 F.2d 1409, 1419 (9th Cir. 1988) ("[P]urely conclusory allegations of alleged discrimination, with no concrete, relevant particulars, will not bar summary judgment.").

Because Plaintiff failed to raise an "inference of race discrimination" through the production of satisfactory evidence, Plaintiff has not established a prima-facie case under Title VII or FEHA with regard to his change in job title.

**2. Non-Discriminatory Reason & Pretext**

Defendant argues that even if Plaintiff could establish a prima facie case, Defendant has nonetheless proffered a legitimate, non-discriminatory reason for its action. The court agrees.

The admissible evidence establishes that Defendant eventually changed Plaintiff's job title because Defendant was not awarded Comcast's non-pay collection contract for the West Bay System. See Bahmanyar Decl., at ¶ 11. At that point, Defendant was required to make a decision, based on its staffing needs, whether two supervisors were needed in the South Bay System. See id. Finding two supervisors unnecessary, Defendant then had to determine whether Plaintiff would be laid off or be offered an alternative position. See id. Defendant ultimately decided that Plaintiff could continue to work as a Non-Pay Technician. See id. Defendant's need to downsize or structurally reorganize is a legitimate non-discriminatory motivation. See Coleman, 232 F.3d at 1282 ("A [reduction in force] is a legitimate nondiscriminatory reason for laying off an employee.").

Defendant's ability to articulate a non-discriminatory reason for changing Plaintiff's job title means that Plaintiff must show pretext. Plaintiff has not done so. See Wallis v. J.R. Simplot Co., 26 F.3d 855, 890 (9th Cir. 1994) (holding that pretext must be shown through "specific, substantial evidence"); see also Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998) (holding

United States District Court
For the Northern District of California

that a plaintiff "must produce evidence in addition to that which was sufficient for her prima facie case in order to rebut the defendant's showing" of non-discriminatory purpose). For this reason, Plaintiff would be unable to demonstrate a triable issue of fact even if he had establish a prima facie case.

The court will grant Defendant's motion for summary judgment as to race discrimination based on the change in job title.

**C. Failure to Promote**

Plaintiff also alleges Defendant violated Title VII and FEHA when it discriminated against him because of his race by failing to promote him back to Non-Pay Supervisor after changing his title to Non-Pay Technician.

As expected, this disparate treatment claim is also analyzed using the McDonnell-Douglas burden shifting framework under both Title VII and FEHA. See McDonnell-Douglas, 411 U.S. at 802; see also Clark v. Claremont Univ. Center & Graduate Sch., 6 Cal. App. 4th 639, 662 (1992).

On a claim for failure to promote, a plaintiff must show the following to establish a prima facie case: "(1) that plaintiff belongs to a racial minority; (2) that plaintiff applied and was qualified for a job for which the employer was seeking applications; (3) that, despite plaintiff's qualifications, plaintiff was rejected; and (4) that, after plaintiff's rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." Barefield v. Bd. of Trs. of the California State Univ., Bakersfield, 500 F. Supp. 2d 1244, 1259 (E.D. Cal. 2007) (citing McDonnell-Douglas, 411 U.S. at 802).

Turning to the instant case, Plaintiff has not put forth evidence to satisfy the second or fourth elements of a prima facie case. As to both elements, Plaintiff has not shown that a Non-Pay Supervisor position for the West Bay System or a second supervisory position in the South Bay System remained open and available after his job title was changed to Non-Pay Technician. In addition, as previously discussed, Plaintiff's reliance on Garcia's perceived promotion is misplaced; Garcia was not similarly-situated to Plaintiff and was not given a supervisory position.

Furthermore, Defendant has provided a legitimate non-discriminatory reason for not re-

United States District Court
For the Northern District of California

promoting Plaintiff. Specifically, it is undisputed that Plaintiff's supervisory position was first transferred and then eliminated because Defendant did not obtain the Comcast contract for the West Bay System. See Bahmanyar Decl., at ¶¶ 11, 13. The only admissible evidence before the court therefore supports Defendants position that Plaintiff was not re-promoted due to Defendant's financial concerns rather than due to discrimination. Since Plaintiff has not shown that Defendant's reason is a pretext for something else, he has not raised a triable issue of fact even if establishment of a prima facie case is presumed.[3]

The court will grant Defendant's motion for summary judgment as to race discrimination based on failure to promote.

**D. Unlawful Harassment**

Plaintiff claims he was subjected to unlawful workplace harassment in violation of Title VII and FEHA because of the racial remakes made by his coworkers. This claim is one alleging hostile work environment.

To establish a prima facie case of harassment based on race, a plaintiff must show that: (1) defendant subjected him to verbal or physical conduct based on his race; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment. Surrell v. California Water Serv. Co., 518 F.3d 1097, 1108 (9th Cir. 2008). In determining whether alleged harassment is actionable, "courts must consider all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Faragher v. City of Boca Raton, 524 U.S. 775, 786 (1998) (internal quotations omitted). Harassment claims under Title VII and FEHA are analyzed using the same standard. See Lyle v. Warner Bros. Television Prods., 38

---

[3] In showing pretext, it appears Plaintiff would also need to overcome the presumption arising from the fact that the same individual apparently hired Plaintiff as a supervisor, approved his change in job title to Non-Pay Technician, and then determined that Plaintiff would not be re-promoted due to the elimination of the supervisory position. See Bradley v. Harcourt, Brace & Co., 104 F.3d 267, 270-71 (9th Cir. 1996) ("[W]here the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory motive.").

United States District Court
For the Northern District of California

Cal. 4th 264, 278-79 (2006).

Taking the three incidents as alleged, Plaintiff has not established a prima facie case of race harassment. To begin, Plaintiff has not shown that the harassment was either severe or pervasive. Plaintiff alleges only three isolated incidents. The first involved a single salutation by a coworker. See Pl.'s Dep., at pp. 155:17-157:10; 230:23-233:24. The second and third incidents occurred when Plaintiff overheard the conversations of other employees. See id., at pp. 158:7-163:3; 176:14-177:23. In addition, there is no evidence to suggest that the alleged harassment affected Plaintiff or interfered with his work performance.[4] The evidence, based mainly on Plaintiff's deposition testimony, therefore demonstrates that these incidents were merely offensive utterances, if anything, and do not constitute actionable harassment as a matter of law. See Brooks v. City of San Mateo, 229 F.3d 917, 923 (9th Cir. 2000) (defining a hostile work environment as a "workplace permeated with discriminatory intimidation.").

But even if Plaintiff had satisfied his initial burden, the evidence does not establish Defendant's liability since Plaintiff testified that he failed to report the first two incidents and that Defendant took immediate corrective action when he did report the third incident. See Pl.'s Dep., at pp. 155:17-158:6; 161:24-163:3; 177:24-175:1; 182:15-22; see also Mockler v. Multnomah Cnty., 140 F.3d 808, 812 (9th Cir. 1998) (clarifying that it is the plaintiff's burden to prove the defendant's knowledge of harassment and the failure to take corrective action).

Since Plaintiff has not established a prima facie case or raised a genuine issue of material fact, the court will grant Defendant's motion for summary judgment as to Defendant's claim of race harassment.

**E. Retaliation**

Plaintiff finally claims he was discharged from employment in violation of Title VII and FEHA in retaliation for his discrimination complaint to the EEOC. In response, Defendant argues

[4] Although Plaintiff suggests in his opposition to this motion that these incidents caused his blood pressure to be "dangerously high" and made him feel stressed and uncomfortable, such a suggestion, without something more to support it, is not sufficient evidence at the summary judgment stage. See Hansen, 7 F.3d at 138.

13

Case No. 5:11-cv-01830 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING AS MOOT DEFENDANT'S MOTION TO STRIKE

United States District Court
For the Northern District of California

that the court lacks subject matter jurisdiction over the retaliation claim because Plaintiff failed to exhaust his administrative remedies. Alternatively, Defendant argues that Plaintiff failed to establish a prima facie case.

**1. Exhaustion of Administrative Remedies**

For its exhaustion argument, Defendant contends that Plaintiff failed to allege a retaliation claim in the text of his EEOC complaint.

In order to establish this court's subject matter jurisdiction over the retaliation claim, Plaintiff was required to exhaust his administrative remedies by either "filing a timely charge with the EEOC, or the appropriate state agency, thereby affording the agency an opportunity to investigate the charge." B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1099 (9th Cir. 2002). Although subject matter jurisdiction normally does not extend to claims not raised before the administrative agency, a complaint may nevertheless encompass discrimination that is "like or reasonably related" to the factual allegations actually contained in the EEOC charge. Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 636 (9th Cir. 2002). EEOC charges are liberally construed, and subject matter jurisdiction may be exercised over any allegations of discrimination that either "fell within the scope of the EEOC's actual investigation or an EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." B.K.B., 276 F.3d at 1100 (emphasis in original).

In Couveau v. American Airlines, Inc., 218 F.3d 1078 (9th Cir. 2000), the plaintiff brought a discrimination suit against her former employer alleging the airline failed to reinstate her from medical leave and then wrongfully terminated her employment. Plaintiff filed a charge with the appropriate state administrative agency before filing the lawsuit but did not include a claim for wrongful termination in the charge because she had not yet been terminated at the time of filing. In a motion for summary judgment, the airline argued that plaintiff failed to exhaust administrative remedies on the wrongful termination claim since it was not included in Plaintiff's administrative charge. The district court granted summary judgment in favor of the airline.

The Ninth Circuit disagreed and reversed. 218 F.3d at 1084. The court held plaintiff had

United States District Court
For the Northern District of California

exhausted her administrative remedies as to the wrongful termination claim because it was "like or reasonably related" to the claim for failure to reinstate, a claim which Plaintiff had specified in the administrative charge. Id. at 1082. The court reasoned that the "like or reasonably related" standard "may include acts of discrimination that occur after the charge is filed." Id. "'To force an employee to return to the state agency every time he claims a new instance of discrimination in order to have the EEOC and the courts consider the subsequent incidents along with the original ones would erect a needless procedural barrier.'" Id. (quoting Oubichon v. North Am. Rockwell Corp., 482 F.2d 569, 571 (9th Cir. 1973)).

As described, Couveau is factually similar to the instant case. Here, Plaintiff stated in his EEOC charge that he was demoted because of his race but did not include a claim for retaliation. See Bahmanyar Decl., at ¶ 13, Ex. B.; see also Emmert Decl., at ¶ 6. Much like Couveau, the facts constituting the retaliation claim did not arise until after Plaintiff filed the EEOC charge since he was not actually discharged until months later. See Bahmanyar Decl., at ¶¶ 13-14. But since the claim is the final step in the chain of discrimination alleged by Plaintiff in the EEOC charge, it relies in the same nucleus of facts and is "like or reasonably related" to the demotion claim. Under Couveau, Plaintiff was not required to amend or file a new complaint with the EEOC to satisfy the exhaustion requirement. Accordingly, this court has subject matter jurisdiction to consider the retaliation claim.

**2. Prima Facie Case**

With jurisdiction established, the court must now determine whether Plaintiff has established a prime facie case. On a claim of retaliation, Plaintiff must show (1) he engaged in a protected activity, (2) he was subject to an adverse employment action; and (3) a causal link between the two exists. Brooks, 229 F.3d at 928. If Plaintiff meets this burden, Defendant must put forth a legitimate, non-discriminatory reason for the adverse employment action. Id. If that is accomplished, Plaintiff must then show that the stated reason is pretext. Id. Title VII and FEHA claims are each examined under this same burden-shifting structure. Id.

The court may consider the timing of the adverse employment action in relation to the

United States District Court
For the Northern District of California

protected activity to determine the existence of a causal link. See Miller v. Fairchild Indus., Inc., 885 F.2d 498, 505 (9th Cir. 1989). Close proximity in time may support an inference of retaliation sufficient to overcome summary judgment. Anthoine v. N. Cent. Counties Consortium, 605 F.3d 740, 751 (9th Cir. 2010). Longer periods may not. See, e.g., Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1035-36 (9th Cir. 2006) (finding a period of nine months with an absence of other supporting evidence too long to support an inference that complaint was related to plaintiff's termination).

Defendant argues that the eight month period of time between the filing of Plaintiff's EEOC charge and his discharge from employment is too great to support an inference of causation. Although the Ninth Circuit has found "without regard to other circumstances . . . three to eight months is easily within the time range that supports an inference of retaliation," this court must agree with Defendant in this case. Cosaltzer v. City of Salem, 320 F.3d 968, 977 (9th Cir. 2003). "Whether an adverse employment action is intended to be retaliatory is a question of fact that must be decided in the light of the timing and the surrounding circumstances." Id. at 978. Here, Plaintiff has not produced any other evidence supporting the claim for retaliation, and the "surrounding circumstances" are similarly unsupportive of such a conclusion. Although the EEOC was still investigating Plaintiff's charge at the time he was laid off, there is no indication that the individual who made the decision to discharge Plaintiff knew of his EEOC filing. Morever, it is undisputed that Defendant had already transferred and then reclassified Plaintiff as a cost-cutting measure after it first lost and then failed to regain the Comcast contract for the West Bay System, which supports Defendant's contention of discharge based on financial concerns. Additionally, it is noteworthy that Plaintiff was not the only employee discharged in August, 2008. These circumstances, coupled with the 8-month period between the EEOC charge and the discharge, do not support an inference of retaliation. In the absence of any other admissible evidence, the court finds that Plaintiff has not established a prima facie case of retaliation.

Furthermore, Plaintiff has not raised a genuine issue of material fact even if the court were to proceed to the burden-shifting analysis. Defendant's articulation of cost savings as a non-

16

Case No. 5:11-cv-01830 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING AS MOOT DEFENDANT'S MOTION TO STRIKE

United States District Court
For the Northern District of California

discriminatory reason for the lay off is legitimate, and there is no evidence in the record to suggest this reason is pretext. The court will therefore grant Defendant's motion for summary judgment as to the retaliation claim.

**IV. ORDER**

In light of the foregoing:

1. Plaintiff's request to amend the Complaint is DENIED, and the SAC (Docket Item No. 59) is STRICKEN. Defendant's Motion to Strike (Docket Item No. 64) is DENIED AS MOOT.

2. Defendant's Motion for Summary Judgment (Docket Item No. 43) is GRANTED in its entirety.

Since this order effectively resolves this case, all previously-set deadlines and hearings, including the trial dates, are VACATED. Judgment shall be entered in favor of Defendant and the clerk shall close this file.

**IT IS SO ORDERED.**

Dated: May 22, 2012

EDWARD J. DAVILA
United States District Judge

17

Case No. 5:11-cv-01830 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING AS MOOT DEFENDANT'S MOTION TO STRIKE